UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

    Plaintiff,

v.                                  Case No. 8:15-cv-01544-EAK-AEP

COMENTIS, INC.,

    Defendant.

_____/

## ORDER

This cause is before the Court on Defendant's motion to dismiss (Doc. 15), Plaintiff's opposition to Defendant's motion to dismiss and cross-motion for summary judgment (Doc. 21), Defendant's reply in support of its motion to dismiss (Doc. 29), and Plaintiff's reply in support of its cross-motion for summary judgment (Doc. 32).

The Court finds that the motion to dismiss is due to be granted. Therefore, Plaintiff's cross-motion for summary judgment is denied as moot.

### PROCEDURAL HISTORY AND BACKGROUND

Plaintiff, the University of South Florida Board of Trustees ("USF"), filed its complaint on June 30, 2015 (Doc. 1) requesting that this Court find Defendant, CoMentis, Inc. ("CoMentis"), in breach of the settlement agreement it entered into with Plaintiff in April 2012. The settlement agreement and resultant dispute stem from previous federal litigation, described briefly here.

Between June 2009 and November 2010, the Alzheimer's Institute of America, Inc. ("AIA"), filed three separate patent infringement actions against various defendants.[1] The action filed in the Northern District of California asserted against defendants four patents (the "California Action"). The action filed in the Eastern District of Pennsylvania asserted against defendants two patents (the "Pennsylvania Action"). The action filed in the Western District of Oklahoma (the "Oklahoma Action"), to which CoMentis was a defendant, asserted against three patents (Doc. 1).

Named as inventor on each of the patents is Michael J. Mullan, a former USF employee. At some point in time, Mullan assigned the patents to AIA (Doc. 15). Defendants in the Pennsylvania action challenged AIA's standing, arguing that Mullan could not have legally assigned the patents to AIA because under Florida law any ownership would have vested in USF, Mullan's employer during the time he worked on the inventions (Doc. 15). USF, to "protect its ownership interest," moved to intervene in the Pennsylvania Action (Doc. 1; Doc. 15, Exhibit D). The Eastern District of Pennsylvania allowed USF to intervene only on the "issue of whether or not [USF] waived its rights in the invention claim[ed] by . . . Mullan" (Doc. 15, Exhibit E). The court denied intervention "for any other purpose" (Doc. 15, Exhibit E).

Each defendant in the three District Court actions, including CoMentis, eventually entered into a settlement agreement with USF. Aside from the amounts due, each agreement is identical (Doc. 1). Each defendant agreed to

---

[1] "The patents in suit are for technology related to Alzheimer's disease, including nucleic acids coding for the so-called 'Swedish mutation' and transgenic mice carrying the mutation" (Doc. 15, Exhibit A).

2

make to USF a guaranteed payment[2] and a contingent payment "if the contingency occurs" (Doc. 1, Exhibit A). It is the contingency provision of the settlement agreement that lies at the center of the parties' current dispute.

The relevant portion of the contingency provision is set forth as follows:

> (b) <u>Contingent Payment.</u> Within thirty (30) days after the date USF has notified Licensee in writing that: (i) by order of a court of competent jurisdiction binding upon AIA and from which no further appeal or challenge may be taken, it has been determined that USF did not waive its ownership interests in the Asserted Patents and has held at all material times a valid ownership interest in said patents

(Doc. 1, Exhibit A).[3]

Thus, for payment to come due under the contingency provision, a court as described above must find that USF (1) "did not waive its ownership interest in the Asserted Patents" and (2) "held at all material times a valid ownership interest in said patents."

The parties' main contention is over whether there is in fact a final, non-appealable "order of a court . . . [that] determined that USF ... held at all material times a valid ownership interest in said patents." USF argues that the Eastern District of Pennsylvania addressed this issue in numerous orders alluding that USF had an ownership interest in the patents (Doc. 1). CoMentis disagrees: "USF does not identify any final and non-appealable order determining that USF 'held at all material times a valid ownership interest' in the asserted patents" (Doc. 15). Significantly, CoMentis disputes that USF's ownership interest in the patents was litigated in the Eastern District of Pennsylvania in any fashion;

---

[2] The parties agree that CoMentis made the guaranteed payment in full.
[3] The parties do not raise any issues under clause (ii) of the contingency provision, omitted from this opinion.

3

rather, CoMentis argues that only USF's ownership interest in the *inventions* was addressed (Doc. 15).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1261 (11th Cir. 2012). Legal conclusions, unlike factual allegations, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Following these principles, courts apply a two-pronged approach when considering a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, a court must "eliminate any allegations in [a] complaint that are merely legal conclusions." *Id.* Then, a court must take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotation marks omitted)). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face" is subject to dismissal. *Id.* at 1289 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570) (internal quotation marks omitted)).

In addition, dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of the complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams,* 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1009–10 (11th Cir. 1992).

The Eleventh Circuit has adopted the "incorporation by reference" doctrine, under which a district court may consider attached documents and take judicial notice of certain facts without converting the motion to dismiss into one for summary judgment. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *Universal Express, Inc. v. U.S. S.E.C.,* 177 Fed. App'x 52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999)). A court may do this if the attached documents are (1) central to the plaintiff's claim and (2) undisputed. *Horsley,* 304 F.3d at 1134. "Undisputed in this context means that the authenticity of the document is not challenged." *Id.*

## DISCUSSION

The parties have established that Florida law governs any dispute arising from the settlement agreement (Doc. 1, Exhibit A). Under Florida law, "construction and enforcement" of settlement agreements "are governed by principles of Florida's general contract law." *Schwartz v. Florida Bd. of Regents,* 807 F.2d 901, 905 (11th Cir. 1987). To state a claim for breach of contract under Florida law, USF must allege (1) existence of a contract; (2) breach of the contract; and (3) damages as a result of the breach." *Vega v. T-MobileUSA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law); *Rollins, Inc. v.*

*Butland*, 951 So.2d 860, 876 (Fla. 2nd DCA 2006). The parties do not dispute the existence of a contract. Whether USF sufficiently alleges a breach must be determined by applying the factual allegations, assumed true, to the unambiguous language of the contract: "where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, a court is required to enforce the contract according to its clear terms." *Kwok v. Delta Air Lines, Inc.*, 578 Fed. App'x 898, 900 (11th Cir. 2014).

USF alleges that "once the Pennsylvania Action came to a final resolution, all conditions to the obligation of Defendants to make the contingent payments . . . occurred" (Doc. 1). USF states

> [t]here is no dispute that, in the Pennsylvania Action . . . all orders . . . are final and not subject to appeal and . . . the Court determined that USF did not waive any ownership interest in the Asserted Patents. . . . All Defendants other than CoMentis have also agreed that, in the Pennsylvania Action, the Court determined that USF held at all material times a valid ownership interest in the Asserted Patents

(Doc 1).

USF points this Court to various rulings or opinions issued by the court in the Pennsylvania Action to support its position that the contingency—a determination by a non-appealable court order that USF did "not waive its ownership interests" and held "at all material times a valid ownership interest" in the disputed patents—has been fulfilled and that CoMentis is in breach for nonpayment. Many of the litigation documents USF directs this Court to consider were not attached to its complaint; however, CoMentis provided the Court with additional exhibits that include the documents referenced by USF. Because

6

these relevant court records are central to USF's claim and because their authenticity is undisputed, this Court will consider them along with the parties' pleadings.

USF first points this Court to certain passages of the Eastern District of Pennsylvania's pretrial ruling determining the issue of AIA's standing. The court order makes specific reference to USF's ownership, writing in terms of both "inventions" and "patents." The court states: "rights to the patents in suit vested immediately in USF by operation of the Florida regulation" and "ownership of the inventions vested in USF by operation of Florida law" (Doc. 15, Exhibit A). From this, USF concludes,

> [a]lthough the [c]ourt spoke sometimes of rights in the "inventions" and sometimes of rights in the "patents, there is no meaningful difference in the context of what the Court was addressing... when the Court determined that AIA had no standing (because [] Mullan was not an owner of the patents), that determination rested on the conclusion that USF did hold rights in the patents.

(Doc. 1).

USF next points to the Pennsylvania Action jury verdict form, which included the following question: "Did the University of South Florida knowingly and intentionally waive its ownership rights to the Swedish mutation invention?" The jury answered "No" (Doc. 15, Exhibit F). From this, USF concludes a court has determined that it did not waive its ownership rights in either the inventions or the patents: "at trial, the jury . . . found that USF had not waived its ownership interest in the invention or in the Asserted Patents" (Doc. 1).

USF is not dissuaded by the fact that the Eastern District of Pennsylvania declined to issue a declaration stating that USF owns the patents at issue.

7

Rather, USF contends the denial means only that the question of its "full ownership could not have been fully litigated." USF claims the court's denial "is an entirely separate matter than what was litigated—AIA's standing, and by necessary implication, that USF has at least *some* ownership interest in the Asserted Patents" (Doc. 1) (emphasis added).

Finally, USF points to a post-trial opinion discussing attorneys fees to note that the Eastern District of Pennsylvania "described the case in a way that makes clear—contrary to CoMentis' position—that the [c]ourt understands that the case decided rights in the subject **patents,** not just rights in the inventions" (Doc. 1) (emphasis in original).

As USF acknowledges, CoMentis attempts a distinction, arguing that the Pennsylvania Action addressed only USF's ownership interest in the *inventions,* not its ownership interest in the patents. Specifically, CoMentis directs this Court to the post-trial order denying USF's request for a declaration that it owns the patents at issue:

> The [c]ourt explicitly rejected USF's argument that the earlier summary judgment decision had determined that it had an ownership interest in the Asserted Patents and clarified that for the purposes of deciding standing, which was the only issue before the Court, it had *not* decided and need not decide whether USF had an ownership interest in the *patents,* but instead only that under Florida law Mullan's ownership interest in the Swedish mutation *inventions* that were claimed in the patents had vested in USF by operation of law at the time of invention

(Doc. 15) (emphasis in original). Indeed, the Eastern District of Pennsylvania emphasized the limited scope of the prior litigation, and noted that its occasional reference to USF's ownership rights in patents rather than inventions was

"mistaken"[4] (Doc. 15, Exhibit B). The court held that it would not determine USF's ownership, because to do so would prejudice AIA.[5]

Neither party directs the Court to law clearly resolving the issue of whether or not ownership in invention necessarily leads to a presumption—rebuttable or otherwise—of ownership in patent. It is indisputable, however, that a difference exists both in basic definition and in law.[6]

Regardless, this Court need not scrutinize the opinions of the Pennsylvania Action to determine whether it meant to confer upon USF any verification of patent ownership. The court's post-trial order makes plain that it did **not** intend to do so. Rather, the court intended to address USF's position only as it related to ownership in invention. The court makes this clear when indicating its concern that holding otherwise would unfairly prejudice AIA.

As CoMentis points out in its motion, fulfillment of the contingency provision unambiguously requires that an "order of a court" determine that USF have an ownership interest "at all material times." The Eastern District of

---

[4] The court emphasized, "Ignoring the multitude of times we referred to USF's ownership rights in the invention, USF has apparently seized on these two misstatements to assert that we held that it held ownership rights to the patents" (Doc. 15, Exhibit B).

[5] Prior to the close of trial, AIA had been precluded from introducing certain evidence and raising an affirmative defense against USF because such was not relevant to the only issue before the court—AIA's standing against two other defendants (see Doc. 1, Exhibit A).

[6] See generally 35 U.S.C. § 101; *General Information Concerning Patents*, USPTO (Oct. 2014), http://www.uspto.gov/patents-getting-started/general-information-concerning-patents. Likewise, the Florida Administrative Code was drafted with appreciation of the difference. Fla. Admin. Code r. 6C4-10.012(3)(c) consistently refers to a state university's right to its employee's "inventions and works." The word "patent" is not used interchangeably with these terms. The only times "patent" is referenced is with regard to the making of patent applications or separate "patent rights."

Pennsylvania made clear that it would not approve USF's characterization that the court determined USF had an ownership interest in the patents.

USF does not direct us to any court record outside of the Pennsylvania Action to establish an order identifying its ownership in the patents. Because USF cannot plausibly allege that there is a court order determining that it has an ownership interest in the patents, it cannot allege that CoMentis is in breach of the settlement agreement.

USF makes multiple attempts to direct this Court's attention to the intent of the parties at drafting (Doc. 1).[7] USF seems to suggest that it was dishonest of CoMentis to agree to the contingency language if CoMentis knew that it was "impossible for the Court in the Pennsylvania Action ever to determine that USF had a valid ownership interest in the Asserted Patents." USF's grievance in this regard is disingenuous. First, the settlement agreement plainly states that *a court of competent jurisdiction binding on AIA* must give an order determining USF's ownership rights—not that the Eastern District of Pennsylvania must give such an order. There were two other actions involving the AIA patent dispute. In addition, the Eastern District of Pennsylvania alluded to the fact that USF is not foreclosed from engaging in further litigation against AIA to establish its rights.

USF is not barred from amending its complaint, presuming it can point to some other "order of a court... binding upon AIA... and from which no further appeal or challenge may be taken" determining the issue of its ownership interest in the patents.

---

[7] This Court does not analyze the intent of the parties or draw any such conclusions regarding intent. The Court points to USF's argument only to show a flaw in USF's interpretation of the unambiguous contract.

## CONCLUSION

Plaintiff is warned that this Court may dismiss its second amended complaint with prejudice if it fails to allege plausible facts giving rise to its breach of contract claim. Accordingly, it is,

ORDERED that Defendant's Motion to Dismiss is **GRANTED WITH LEAVE TO AMEND** for failure to state a cause of action. The Amended Complaint shall be filed within ten (10) days of this date or this cause will be dismissed and closed.

Done and **ORDERED** in Chambers at Tampa, Florida, on *TUESDAY, MARCH 1st*, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record